**Import Products Co. Inc. v. Group RL Inc.**

C.P. of Delaware County, no. 95-52216.

*Howard S. Klein,* for plaintiff.
*Matthew Hanna,* for defendants.

SURRICK, *J.,* December 30, 1998—On August 18, 1995, plaintiff filed a complaint against defendants alleging that plaintiff had delivered goods worth $17,171.19 to defendants, that defendants had received and accepted these goods and that defendants had failed and refused to pay for the goods. A non-jury trial was held on January 16, 1998. At the conclusion of the trial this court found in favor of plaintiff and awarded damages in the total amount of $17,191.19. A post-trial motion was timely filed. After review of briefs submitted by counsel and oral argument defendant's motion was denied. The instant appeal followed thus necessitating this opinion.

At the beginning of the trial, counsel for plaintiff and counsel for defendant Roger B. Henderson advised the court that the case was proceeding to trial only against defendant Roger B. Henderson, individually and trading as Partners Automotive Parts Network.[1] Counsel for plaintiff advised that defendant Lawrence Laken was in bankruptcy, that defendant Group RL Inc. was a defunct corporation and that plaintiff was not pursuing its claim against them. (N.T. 4.) Counsel for Henderson

---

1. Defendant Roger B. Henderson was the only defendant present and represented at trial.

advised the court that it was Henderson's position that this debt ($17,191.19) was a corporate debt and that Henderson could not be found personally liable for it. The existence of the debt is not disputed. (N.T. 5.)

## FACTS

Plaintiff Import Products Co. Inc. is a Massachusetts corporation with offices in Bridgewater, Massachusetts. Plaintiff is in the business of importing and distributing automotive products. (N.T. 6-7.) Defendant Group RL Inc. is a Pennsylvania corporation. The sole shareholder in Group RL Inc. is Roger B. Henderson. (N.T. 26.)[2] Defendant Partners Automotive Parts Network is a fictitious name registered pursuant to the laws of the Commonwealth of Pennsylvania and duly certified by the secretary of the Commonwealth. The fictitious name registration indicates that the two entities interested in Partners Automotive Parts Network are the corporation, Group RL Inc., and the individual, Roger B. Henderson. (N.T. 12, exhibit P-2.) Defendant Henderson prepared and recorded the fictitious name registration in July of 1994. He signed it both in his individual capacity and as corporate representative of Group RL Inc. Henderson is a college graduate with a degree in economics who is presently engaged in the insurance business. At one time he owned a jewelry business which he sold. (N.T. 36.)

In February of 1995, Heidi Romanow was credit and customer service manager for plaintiff Import Products. Sometime before February 15, 1995, Ms. Roma-

---

2. Henderson testified that defendant Lawrence Laken also had an interest in the Group RL Inc., but his name did not appear on any corporate documents, because at the time that the corporation was formed, Laken was in the midst of a divorce. (N.T. 25-27.)

now received a call from defendant Laken, who advised that he had seen plaintiff's company at a trade show and that defendants were interested in buying auto parts from plaintiff. Ms. Romanow sent defendants a credit application. (N.T. 6-8.) The credit application was filled out and signed by defendant Henderson and returned to plaintiff. The completed application was dated February 15, 1995 and it was signed by Henderson as "partner." The application indicated that the name of the business which was seeking credit was "Group RL Inc. t/a Partners Auto Parts," and that Roger B. Henderson was the "owner" of the business. Henderson's designation of himself as "partner" was written above the line entitled "position held with company." (Exhibit P-1.)

After receiving the completed application, Ms. Romanow checked the credit references provided by Henderson. Because the credit references were "shaky," Ms. Romanow decided to ask both Laken and Henderson for personal guarantees. Laken returned the guarantee. Henderson did not. (N.T. 11-12.) When Ms. Romanow called Henderson about the guarantee, Henderson pointed out to her that he had signed the credit application as partner, that he was the owner of the company and that he had a good business reputation. Henderson told her that the bill would be paid and that "you have my guarantee." (N.T. 15, 19-21.) Although Ms. Romanow knew that Group RL Inc. was a corporation, because Henderson had signed the credit application as a "partner" in the business enterprise Group RL Inc. t/a Partners Automotive Parts Network, and because he represented to her that he was a partner in that business and told her that he guaranteed payment, Ms. Romanow approved the application. (N.T. 11, 15, 20-21.)

Subsequently, based upon the credit application and the representation made by Henderson, plaintiff shipped

in excess of $17,000 worth of automotive parts to defendants. Plaintiff has received only one payment from defendants. That payment was a $500 check drawn on the account of Group RL Inc. t/a Partners Automotive Parts and signed by Roger B. Henderson. (N.T. 11-12, 22.)

In his post-trial motion, Henderson alleges that the verdict was against the weight of the evidence and against the law. He contends that he cannot be personally liable for this debt because it was a corporate debt for which there can be no personal liability. We disagree.

## DISCUSSION

In a bench trial it is the duty of the judge to determine the credibility of the witnesses and the weight to be given their testimony. The court's findings in this regard will not be disturbed absent an abuse of discretion. *Weir by Gasper v. Estate of Ciao,* 521 Pa. 491, 556 A.2d 819 (1989). The standard of review in a non-jury trial was discussed in the case of *Olmo v. Matos,* 439 Pa. Super. 1, 5-6, 653 A.2d 1, 3 (1994) as follows:

The reviewing court must determine "whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of the law. [Additionally,] findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent an error of law or an abuse of discretion."

Moreover in the case of *Brenna v. Nationwide Insurance Company,* 294 Pa. Super. 564, 567-68, 440 A.2d 609, 611 (1982), the Superior Court said: "[i]t is also clear that in reviewing the findings of the trial judge, the victorious party is entitled to have the evidence viewed in the light most favorable to him and

all the evidence and proper inferences favorable to the successful party must be taken as true and all unfavorable inferences rejected."

Initially, we would observe that we reject defendant's argument that he did not represent himself to plaintiff as anything other than a corporate officer. Clearly, Henderson did represent himself to plaintiff as something other than a corporate officer. He represented himself as a "partner" in a business entity called Group RL Inc. t/a Partners Auto Parts Network.

Section 8328 of the Uniform Partnership Act entitled *Partner by Estoppel* provides in pertinent part:[3]

"(1) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to the person to whom the representation has been made who has, on the faith of the representation, given credit to the actual or apparent partnership, and if he has made the representation or consented to its being made in a public manner he is liable to that person, whether the representation has or has not been made or communicated to the person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made."

In the case of *O'Brien v. Gere Engineering Inc. v. Taleghani,* 525 F. Supp. 750 (1981), the Federal District Court for the Eastern District of Pennsylvania applied Pennsylvania's partnership by estoppel provision in finding that defendant was personally liable as a partner by estoppel in a situation where defendant claimed that

---

3. 15 Pa.C.S. §8301 et seq.

no partnership in fact existed.[4] In so holding the court stated:

"Thus, under Pennsylvania law, the elements of partnership by estoppel are (1) a representation to a third party that one is a partner; (2) reliance upon that representation by the third party to whom it was made and (3) the extension of credit by such party on reliance upon the representation."[5]

In the case of *Lazarus v. Goodman,* 412 Pa. 442, 445-46, 195 A.2d 90 (1963), our Superior Court discussed partnership by estoppel as follows:[6]

"One may have partnership obligations imposed upon himself by estoppel. This occurs when one holds himself out, or knowingly permits himself to be held out, as a partner in a particular firm. . . . Estoppel is based upon the principle that if a man holds himself out, either actively or passively, or permits himself to be held out as a member of a partnership, and so induces third parties to deal with the firm and extend credit upon the belief that the party estopped was a member thereof, and upon credit of this party, when otherwise they would not have so dealt, he should not then be allowed to deny his apparent connection with the partnership, and so escape liability . . . [T]he parties are liable to one induced thereby to give credit, the ground of such liability not being under direct representations

---

4. See also, *Bing v. Schmitt,* 226 Pa. 622, 75 A. 854 (1910) (it makes no difference whether or not there is a partnership in fact if defendants represented themselves as partners to plaintiff and thereby obtained their goods, they are liable).

5. The court in *O'Brien* was dealing with the partnership by estoppel provision found in 59 Pa.C.S. §328(a)(1). The above recited provision, 15 Pa.C.S. §8328, is a reenactment of section 328(a)(1).

6. *Lazarus* dealt with 59 P.S. §38, statutory provision that predated 15 Pa.C.S. §328.

between the parties, but upon the principles of general policy to prevent fraud."

In the instant case, we are satisfied that defendant Henderson is personally liable to plaintiffs as a partner by estoppel. Henderson actively represented to plaintiff that he was a partner in the business entity Group RL Inc. t/a Partners Auto Parts. He signed the credit application indicating that he was a "partner." And he told plaintiff's representative that he had signed as a partner when asked as to why he had not signed the guarantee that had been sent to him. In addition, Partners Automotive Parts Network is a fictitious name registered by Henderson with the Commonwealth of Pennsylvania. Two legal entities have an interest in Partners Automotive Parts Network, Roger B. Henderson, the individual, and Group RL Inc., the corporation. The very name Partners Automotive Parts connotes the existence of a partnership. We do not believe that it can reasonably be argued that Henderson did not represent himself to plaintiff as a partner in what certainly appeared to be a partnership.

We are also satisfied that plaintiff relied upon Henderson's representation that he was a partner. Plaintiff's representative testified that she did, in fact, rely on these representations. She relied on both the written representations on the credit application and the verbal representation that he was a partner and that the bill would be paid. We accept as credible the testimony of plaintiff's representative in this regard.

Finally, plaintiff extended credit to defendants based upon these representations. More than $17,000 worth of goods were shipped to the business entity Group RL Inc. t/a Partners Automotive Parts Network based upon Henderson's representation.

Under the circumstances, we are compelled to conclude that Henderson is a partner by estoppel. Whether a formal partnership in fact exists here is not controlling. Nor is it of significance that the apparent partnership included Group RL Inc. What is important is that Henderson did not represent himself to plaintiff as corporate officer. Rather, he created the impression that he was a partner in an existing partnership. Plaintiff extended credit on that basis.

For these reasons we concluded that Henderson was personally liable for this debt as a partner by estoppel. To conclude otherwise would encourage, not discourage, fraud.